## No. 13,695.

ROBERTS *v.* SCHOOL DISTRICT NO. 1, IN THE COUNTY OF KIT CARSON, STATE OF COLORADO.

(63 P. [2d] 1232)

Decided December 21, 1936.

Mr. C. W. DOLPH, for plaintiff in error.

Mr. LOUIS VOGT, Mr. SIDNEY P. GODSMAN, Mr. CHAS. M. ROSE, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Reference will herein be made to plaintiff in error Roberts as plaintiff. He says in his brief that the action is on a bank check issued by Boggs, as county treasurer of Kit Carson county, Colorado, in payment for certain school warrants held by him, and interest thereon, all in the approximate sum of $12,151.12. In plaintiff's action against the school district, board of county commissioners, Boggs, as county treasurer, Rose as successor to Boggs, Stockgrowers State Bank and Grant McFerson, state bank examiner, he obtained judgment against the bank and bank commissioner, his action against the other defendants being dismissed with prejudice. He now is prosecuting this writ of error to reverse the judgment of dismissal of this action against Boggs, the county treasurer. Since the controversy here involves only the plaintiff, the bank, bank commissioner and Boggs, reference to them will be so made.

Prior to September 16, 1931, plaintiff was the owner and holder of school warrants of a school district located in Kit Carson county. Prior to this time, Boggs, as county treasurer, notified plaintiff that there was sufficient funds on hand to pay the warrants and September 15, 1931, plaintiff presented the warrants to Boggs for payment. September 16, 1931, Boggs, as county treasurer, issued his check payable to the order of plaintiff on the bank above mentioned for the sum of $12,151.12 in payment therefor. This check was mailed from Burlington, Kit Carson county, to the residence of plaintiff in Colorado Springs, and received by him September 17. On that day, the check was deposited by plaintiff in the Exchange National Bank of Colorado Springs, which in turn and on the same day transmitted it by mail to the First National Bank of Pueblo for collection and payment, where the check was received September 18, the

Pueblo bank mailing it to the First National Bank of Denver for collection and payment. The Denver bank received the check September 19 and on that day, with other checks, mailed same to the drawee bank at Burlington for payment with instructions to the drawee bank "to wire nonpayment of $500 and over." Receiving no acknowledgment of this letter of transmission, the Denver bank, September 23, mailed a tracer card to the drawee bank at Burlington requesting it to wire if the cash letter mentioned had been received. The drawee bank September 25 wired the Denver bank, "cash letter of September 19 not received." On that day, the Denver bank wired the Pueblo bank that the check "seems lost in transit, obtain duplicate," and on the same day the Pueblo bank wired this information to the Colorado Springs bank, where the check first was deposited, requesting a duplicate check. This latter bank informed plaintiff by telephone and requested plaintiff to stop payment and obtain a duplicate. On this day, September 25, plaintiff wrote Boggs, the drawer of the check, requesting that payment be stopped and a duplicate check issued to him. September 26, Boggs issued the duplicate check and mailed it to plaintiff and this check took the same course, through the same banks as the original, as outlined above. The check reached the drawee bank at Burlington from the Denver bank on the morning of October 1, the Burlington bank remained open for business all of that day and until about noon October 2, when its doors were closed and possession taken by the bank commissioner later in the afternoon. It appears that plaintiff's check was retained by the bank and bank commissioner for a period of 48 hours after its receipt before it was returned to the Denver bank where it was received October 5, and from there over the same course back to plaintiff who received the check October 8, and who on the day following gave Boggs, the drawer, notice of dishonor which was received by the latter October 10. The Stockgrowers State Bank, a defendant, to which refer-

ence is made as the Burlington bank or the bank, was the depository used by Boggs, as county treasurer, and on October 2, the date of the closing of the bank, he had on deposit in that institution the sum of $76,401.34, for which he was indemnified by the bank to the extent of about $65,000 through securities of the bank posted for that purpose. From September 16 to and including October 1, the amount of cash on hand in the bank ranged approximately from $8,000 to $15,000. Plaintiff's claim, filed with the bank commissioner on February 8, was disallowed March 17 and the claim returned to plaintiff. He filed suit against all defendants June 11, 1932, and by an amended complaint on May 13, 1933, he prayed for judgment against the bank commissioner and treasurer Boggs. Other happenings require no recital. It appears that the recovery of judgment in plaintiff's favor against the bank and bank commissioner was upon the theory of constructive acceptance of plaintiff's check by the bank. Boggs, as drawer of the check, contends that such acceptance discharged him from liability thereon and this is the real question for determination.

The facts are undisputed. Those concerning the delay in transmission of the check to the drawee bank are affirmatively alleged by plaintiff. Defendant Boggs contends that with these affirmative allegations, and without an allegation or proof that Boggs suffered no loss through this delay, or negligence, plaintiff failed to meet the burden that was upon him. Plaintiff, by his allegations and proof, fixed liability upon the bank and bank commissioner, resulting in a judgment in his favor under section 3954, C. L. 1921, which is as follows: "Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or non-accepted to the holder, he will be deemed to have accepted the same." Section 4002 reads: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein other-

wise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check.''

■ The liability adjudged therein was upon the ground of constructive acceptance of the check by the bank. What the bank did, and its conduct relative to the presentment, that was tantamount to an acceptance, was a question of fact which was resolved in plaintiff's favor and is settled by the judgment rendered. That becomes the law of the case so far as that question is now before us, and we need not enter into a discussion concerning the correctness of that judgment. The final question now is: Does that judgment obtained by plaintiff, the full benefits of which he may now enjoy, preclude him from proceeding against Boggs, the drawer of the check, for recovery upon a different or inconsistent theory?

■ Plaintiff contends that the remedies he has against the drawer and drawee of the check are concurrent and not inconsistent, and, since each was severally liable, judgment against one would not be a bar to a judgment against others, until there is a full satisfaction. If this question is determined adversely to the plaintiff, disposition is thereby made of the case and the many other interesting questions involved need not be discussed.

Plaintiff, not Boggs, procured the constructive acceptance upon which he relied to obtain judgment against the bank. That there was such acceptance, has been adjudicated, such adjudication resulting in the judgment. Plaintiff, therefore, cannot pursue a further remedy against Boggs in the same matter, upon which there is a positive statutory discharge. To quote the statute concludes the argument. Section 4005, C. L. 1921: ''Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon.''

■ That the above statute, thus justly operated in Boggs' favor is more apparent when the delay in presentment of the check as alleged by plaintiff is considered.

If such delay resulted in a loss to either plaintiff or Boggs, it was caused by plaintiff without the participation of Boggs, and both being innocent parties, the one bringing about the situation resulting in a loss must bear the burden. So says equity.

Judgment affirmed.

MR. JUSTICE BURKE sitting for MR. CHIEF JUSTICE CAMPBELL who did not participate.

MR. JUSTICE YOUNG not participating.